**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| **BRANDON BEAUFORD and** | § | |
| **BRUCE TURMAN,** | § | |
| | § | **COMPLAINT** |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | **JURY TRIAL DEMANDED** |
| | § | |
| **RESOURCE WEST, INC.,** | § | |
| **PINNACLE COMPANIES, INC., and** | § | |
| **PCI MANUFACTURING** | § | |
| **SOLUTIONS LLC,** | § | |
| | § | |
| *Defendants*. | § | |

Plaintiffs, Brandon Beauford and Bruce Turman ("Plaintiffs"), by and through their attorneys, VALLI KANE & VAGNINI LLP and DINOVO PRICE ELLWANGER & HARDY LLP, bring this action for damages and other legal and equitable relief from the Defendants, RESOURCE WEST, INC ("Resource West"), PINNACLE COMPANIES, INC. ("Pinnacle"), and PCI MANUFACTURING SOULTIONS, LLC ("PCI") (collectively "Defendants") and allege as follows:

## <u>NATURE OF THE ACTION</u>

1.      "Nigger." "Colored." "Boy."   While Plaintiffs worked for Defendants, their supervisors and co-workers regularly subjected Plaintiffs and other Black employees to these racial slurs, other racially hostile and derogatory language, as well as discriminatory pay, promotions and working conditions, among other discriminatory employment practices.  Despite Plaintiffs' frequent reporting of racial hostility and discrimination, Defendants made light of and failed to stop the conduct.  Eventually Defendants retaliated against Plaintiffs by firing them for reporting

these practices, or forced them to quit by making work unbearable with additional hostility and discrimination.

2.      Plaintiffs seek remedy and relief for Defendants' unlawful and discriminatory employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"); Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §§ 1981 *et seq.* ("§ 1981"); and Chapter 21 of the Texas Labor Code, Tex. Labor Code. §§ 21.001 *et seq.* ("TLC").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which confers original jurisdiction upon this Court for actions arising under the laws of the United States, 28 U.S.C. § 1337, which confers original jurisdiction upon this Court for actions arising under any Act of Congress regulating commerce, 28 U.S.C. § 2201, which confers original jurisdiction upon the filing of an appropriate pleading seeking to declare the rights and other legal relations of any interested party seeking such declaration, and 28 U.S.C. § 2202, conferring original jurisdiction concerning further necessary or proper relief based upon a declaratory judgment.

4.      The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over all non-federal claims arising from a common nucleus of operative facts such that they form part of the same case or controversy under Article III of the United States Constitution.

5.      Venue is proper in this Court pursuant to 29 U.S.C. §§ 201-219, because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (c), in that Defendants maintain offices, conduct business and reside in this district.

## **THE PARTIES**

6.      Upon information and belief, Defendant Resource West specializes in wastewater evaporation systems, above-ground storage tanks and mining ventilation systems, and provides related support and services.  Upon information and belief, Resource West is incorporated under the laws of the state of Colorado and has its principal place of business at 326 Main Street, Ste. 230, Grand Junction, Colorado 81501.  Defendant Resource West transacted business within the state of Texas by employing Plaintiffs owning and operating a manufacturing plant located in Sulphur Springs, Texas.  Defendant Resource West has at all relevant times employed over fifteen (15) employees and has been an employer covered by Title VII, § 1981, and the TLC.  Defendant Resource West may be served with process by serving its registered agent, Herbie Jack Hays, 2614 Partridge Ct., Grand Junction, Colorado, 81506.

7.      Upon information and belief, Defendant Pinnacle is a business that formerly manufactured, among other things, construction machinery and equipment.   Pinnacle is incorporated under the laws of the state of Texas and has its principal place of business in Sulphur Springs, Texas.  Pinnacle has a mailing address at 903 Interstate Hwy 30 E, Sulphur Springs, Texas 75482.  Upon information and belief, in or around October 2016, Defendant Pinnacle filed for chapter eleven (11) bankruptcy.  Defendant Pinnacle has at all relevant times employed over fifteen (15) employees and has been an employer covered by Title VII, § 1981, and the TLC.  Defendant Pinnacle may be served with process by serving its registered agent, Matthew Hannah, 903 Interstate Hwy 30 E, Sulphur Springs, Texas 75482.

8.      Upon information and belief, Defendant PCI sells liquid storage and transport equipment for the oil and gas industry, including: liquid storage tanks, belly/bottom dump trailers, vacuum transports, frac tanks, water trucks, bobtails and custom steel manufactured products.  PCI

is incorporated under the laws of the state of Texas and has its principal place of business at 906 N. Hillcrest Road, Sulphur Springs, Texas 75483.  Upon information and belief, Defendant PCI was a wholly-owned subsidiary of Defendant Pinnacle until Defendant Resource West purchased PCI in or around January 2016.  On information and belief PCI is currently a wholly-owned subsidiary of Defendant Resource West.  Defendant PCI has at all relevant times employed over fifteen (15) employees and has been an employer covered by Title VII, § 1981, and the TLC. Defendant PCI may be served with process by serving its registered agent, CT Corporation System, 1999 Bryan St., Ste. 900, Dallas, Texas 75201.

9.      Plaintiff Brandon Beauford is a citizen of Texas and resides in Brookston, Texas.

10.     At all relevant times, Plaintiff Beauford was an employee of Defendant(s) within the meaning of Title VII, § 1981, and the TLC.

11.     Plaintiff Bruce Turman is a citizen of Texas and resides in Sulphur Springs, Texas.

12.     At all relevant times, Plaintiff Turman was an employee of Defendant(s) within the meaning of Title VII, § 1981, and the TLC.

## ADMINISTRATIVE EXHAUSTION

13.     On or about December 8, 2014, Plaintiff Beauford filed a timely verified complaint of discrimination, harassment, and retaliation with the Equal Employment Opportunity Commission ("EEOC")—charge number: 450-2015-0762.

14.     The EEOC issued a Notice of a Right to Sue letter to Plaintiff dated September 21, 2016, which was received by Plaintiff on September 26, 2016. Accordingly, Plaintiff's ninety (90) day Right-to-Sue- period, which is counted from the date of receipt, ends on December 26, 2016.

15.     On or about April 21, 2014, Plaintiff Turman filed a timely verified complaint of discrimination, harassment, and retaliation with the Equal Employment Opportunity Commission ("EEOC")—charge number: 450-2015-02282.

16.     The EEOC issued a Notice of a Right to Sue letter to Plaintiff dated November 29, 2016, which was received by Plaintiff on December 5, 2016. Accordingly, Plaintiff's Turman's ninety (90) day Right-to-Sue- period, which is counted from the date of receipt, ends on March 5, 2017.

## STATEMENT OF THE FACTS

17.     Plaintiffs worked in Defendants' West Plant located in Sulphur Springs, Texas. The West Plant consisted of the machine shop, saw shop and paint shop.

18.     Defendants eventually opened a North Plant also in Sulphur Springs, Texas.  The North Plant also consisted of the machine shop, saw shop and paint shop.  Herein, the North Plant is also referred to as the "North Shop" or "North location."

### Brandon Beauford

19.     Upon information and belief, during the relevant time period, Defendants employed approximately one hundred and thirty (130) employees at their Sulphur Springs manufacturing plant.

20.     Upon information and belief, approximately six (6) of these employees were Black.

21.     Plaintiff Beauford was employed as a welder for Defendants' manufacturing plant located in Sulphur Springs, Texas, from in or around August 2013, until his employment terminated on June 23, 2014.

22.     Among other tasks, Plaintiff Beauford's job duties included assembling Defendants' products by welding metal parts together.

23.   Plaintiff Beauford possessed a welding certification that he earned at Paris Junior College in Paris, Texas.   On information and belief, Plaintiff Beauford's certificate was an American Welding Society-Certified Welding Inspector certification.

24.   At all relevant times, Plaintiff Beauford was paid by Defendant PCI.

25.   Plaintiff Beauford earned $1.00 less per hour than a similarly situated White employee, Justin (last name unknown).

26.   Defendants hired Justin only one day prior to hiring of Plaintiff Beauford.   Upon information and belief, Justin did not possess a welding certification during the relevant time period.

27.   Throughout Plaintiff Beauford's employment for Defendants, he was frequently called "boy," "colored," and "nigger" by his White supervisors and co-workers.

28.   On several occasions, while Plaintiff Beauford was on his break, Plaintiff's White supervisor, Charles Bryant ("Mr. Bryant"), approached him and stated: "Boy you better get your Black ass back to work."

29.   On several occasions, when Plaintiff was using the restroom, Mr. Bryant commented: "Hurry the heck up boy."

30.   In or around August 2013, Defendants received a new type of tank to assemble. Defendants required employees to pass a specific welding test to assemble the new tanks. Additionally, completing the new tanks required welders to work additional hours of overtime. Accordingly, Welders who performed work on the new tanks were paid more than welders who did not because Defendants allotted them more overtime hours.

31.   Upon information and belief, Defendants offered all White employees the opportunity to take the welding test within the first month of their employment.  Upon information

and belief, Defendants permitted all White employees who passed the test to work on the new tanks.

32.     Defendants did not allow Plaintiff Beauford to take the welding test until three months into his employment; Plaintiff Beauford passed the test.   Despite passing, Plaintiff Beauford was never permitted to work on the new tanks.

33.     Plaintiff Beauford repeatedly requested to work on the new tanks, however, Defendants denied all of his requests. Accordingly, he was not able to earn this additional pay that White employees enjoyed.

34.     In or around November 2013, during a conversation between Plaintiff Beauford's White co-workers, Justin and Johnny Van Hosier ("Mr. Hosier"), Justin stated to Mr. Hosier, "What's up my nigger?" To this, Mr. Hosier responded, "Nigger? I'm not the nigger, he's the nigger," and pointed at Plaintiff.

35.     Plaintiff reported Justin's and Mr. Hosier's derogatory conversation to a Black assembly line leader, Bruce Rollerson ("Mr. Rollerson"), who in turn reported Plaintiff's complaint concerning Justin and Mr. Hosier to Christopher Morgan ("Mr. Morgan"), a White supervisor.

36.     Justin and Mr. Hosier were only suspended for half (½) a work day and returned to work thereafter.

37.     On another occasion, Plaintiff Beauford complained to Mr. Bryant's supervisors that Mr. Bryant and others subjected him to discriminatory treatment and harassment and, to escape the toxic work environment, Plaintiff Beauford requested a transfer to a different location of the manufacturing plant known as "the North Shop."   On information and belief, Defendants paid higher wages in the North Shop.

38.     Defendants never transferred Plaintiff Beauford to the North Shop.  Defendants never reprimanded Mr. Bryant and other employees were never reprimanded for their discriminatory conduct.

39.     Shortly after Plaintiff Beauford's complaint to Mr. Bryant's supervisor, Mr. Bryant demoted Plaintiff from a welder to a "floater."

40.     A floater's duties included miscellaneous assignments, which assisted other employees with the performance of their job duties.  Welders did not.  Additionally, at Defendants' worksite, being a floater was significantly less desirable than being a welder because: (a) it required less skill to perform; and (b) a floater was not allowed to receive overtime hours, thereby significantly reducing overall pay.

41.     While in the floater position Plaintiff Beauford's pay was not reduced on an hourly basis, but because he was not allowed to receive overtime hours, it significantly reduced Plaintiff's overall pay.  Plaintiff Beauford repeatedly requested Defendants to reinstate him as a welder, but was always denied.

42.     Throughout Plaintiff Beauford's employment as a floater, Defendants were hiring new welders.

43.     Defendants never gave Plaintiff Beauford a reason for why he was demoted to a floater.  However, following Plaintiff Beauford's demotion, Mr. Bryant and other supervisors and/or employees referred to Plaintiff Beauford as a "snitch" and stated that he "could not take a joke."

44.     In or around May 2014, Plaintiff Beauford was ordered to perform work by himself on a welding project that usually required two employees to perform.  As he worked on this welding project, Mr. Bryant screamed at Plaintiff Beauford to work faster.  In complying with Mr.

Case 2:16-cv-01443-JRG-RSP   Document 1   Filed 12/21/16   Page 9 of 23 PageID #:  9

Bryant's orders, Plaintiff Beauford missed a few welds.  When Mr. Bryant discovered the missing

welds he informed Plaintiff Beauford.  Plaintiff offered to correct the missing welds.

45.     Mr. Bryant ignored Plaintiff Beauford's offer and ordered him to re-weld the entire

project, including the welds that Plaintiff Beauford already completed.

46.     Upon information and belief, Defendants have never ordered their welders to re-

weld an entire project before.

47.     During the relevant time periods, Defendants maintained and practiced a policy for

discipline that included a "point system."  If an employee was disciplined under the point system

they received a "point," which could lead to further discipline up to termination.

48.     In or around June 2014, Plaintiff Beauford requested a day off from Defendants.

49.     Defendants told Plaintiff Beauford that if he worked half a day and brought in a

note explaining his absence, he would only receive half (½) a point instead of a full one (1) point.

However, instead of giving Plaintiff Beauford half (1/2) a point as Defendants promised, White

supervisor Mr. Morgan issued Plaintiff Beauford (1) point and suspended him for three (3) days.

Prior to the abovementioned incident, on information and belief, Plaintiff Beauford had never

received any disciplinary points.

50.     In Plaintiff Beauford's experience, he had never seen Defendants suspend an

employee for their first disciplinary point.  In fact, Defendants suspended White employees who

used racially derogatory language only a fraction of the time Plaintiff Beauford was suspended for

an excused absence.

51.     Following Plaintiff Beauford's suspension, on June 23, 2014, Plaintiff Beauford

called Defendants to inform them that this decision to suspend him made it impossible for him to

continue in his position.  Defendants' employee, James Smalls, stated to Plaintiff Beauford that Defendants were going to "terminate him anyway."

52.     Rather than accept a termination, Plaintiff resigned his position.

53.     For several months, Plaintiff Beauford sought and was unable to secure permanent equivalent employment elsewhere.  Accordingly, Plaintiff was forced to inquire into Defendants' rehire policy.

54.     In October 2014, Plaintiff Beauford spoke to Defendants' Human Resources Department about rehiring.  A White Supervisor stated that Defendants could not rehire Plaintiff Beauford because he was terminated.

55.     When Plaintiff clarified that he had resigned his position, Defendants told him he could not be rehired because he was considered a "problem."

56.     In October 2014, Defendants were hiring White employees for similar positions.

57.     As a result of Defendants' discriminatory and retaliatory actions, Plaintiff Beauford suffered economic damage such as loss of salary, benefits, and other compensation.  Plaintiff Beauford has also suffered emotional pain and suffering.

**Bruce Turman**

58.     Plaintiff Turman began working as an employee at Defendants' on February 14, 2012 as a machine operator in the saw shop of Defendants' Sulphur Springs, TX manufacturing location.  He earned $10.00 per hour.  He was a PCI employee until July 23, 2014, when Defendants wrongfully terminated him in retaliation for reporting discriminatory and hostile treatment.

59.     Throughout his tenure at Pinnacle, Plaintiff Turman was subjected to a racially hostile work environment.  His White supervisors and peers continuously referred to Plaintiff

Turman and other Black men as "boy" and "nigger."  Plaintiff Turman consistently addressed this conduct with co-workers and supervisors by explaining that using this language to refer to Black men was offensive.  However, his co-workers and supervisors routinely made light of his concerns and continued to use the racially hostile language.  Examples of such conduct follow:

60.     In or around May 2012, Plaintiff Turman heard Chuck (last name unknown), a White maintenance worker, say "Where I'm from if one person is called a nigger, then everyone is a nigger" while Chuck sat with White co-workers.  Plaintiff Turman was offended and requested that Chuck not use this language again in his presence.  Following Pinnacle's reporting procedures, Plaintiff Turman also reported Chuck's racially offensive language to his lead man, James Moss ("Mr. Moss").  Mr. Moss stated that "He [Chuck] was only joking," and he refused to report the incident further up.  Mr. Moss's refusal to report violated Pinnacle company policy.

61.     In or around October 2012, Plaintiff Turman asked a White co-worker, Bobby (last name unknown), to complete a work-related task.  In response, Bobby said, "I ain't letting no niggers give me no orders" and "I ain't letting no nigger tell me what to do."  Mr. Turman complained, but nothing was done about these racial slurs.

62.     Plaintiff Turman was also denied opportunities for promotion and financial raises because of his race, often in incidents involving racial slurs that contributed to the hostile work environment.

63.     In or around November 2012, Plaintiff Turman learned about an opening for a forklift operator position.  Plaintiff Turman asked a White Assistant Plant Manager, Mr. Morgan (as above) if he could apply; Mr. Morgan told him no.  Plaintiff Turman then asked a White Plant Manager, Brian Fowler ("Mr. Fowler") if he could apply; Mr. Fowler also said no.  Mr. Fowler

also refused to provide Plaintiff Turman with the training necessary for the position he was seeking.

64.     In or around March 2013, Plaintiff Turman learned about an opportunity for promotion that coincided with Pinnacle's opening of the new Pinnacle North location.  When Plaintiff Turman asked Mr. Moss what it would take for him to get the promotion, Mr. Moss replied, "Boy, you gotta be out of your mind.  I'm not going to let you go.  I already talked to Brian [Fowler] and there's no way that's going to happen."

65.     Pinnacle eventually moved Plaintiff Turman to the paint shop and then the test department, but at Mr. Fowler's request he continued to work some of the time in the saw shop. In July 2014, Mr. Fowler asked Plaintiff Turman to come in on a Saturday and replace a White employee, Mr. Howard.  After learning of this arrangement, Mr. Howard said, "Bullshit.  This boy isn't going to run this saw."  To avoid conflict, Plaintiff Turman performed other work instead.

66.     On July 22, 2014, after Mr. Fowler again asked Plaintiff Turman to operate the saw, Plaintiff Turman requested that Mr. Fowler explain this to the workers at the saw shop.  Mr. Fowler responded, "Boy, what the fuck are you talking about?  You are being insubordinate today."  Even after Plaintiff Turman explained his previous conflict with Mr. Howard, Mr. Fowler said, "I don't want to hear this shit.  If you don't like it you can fucking clock out.  This is my fucking plant boy."  Then, Mr. Fowler began to say "I'm sick of you niggers," but before he could complete the word "nigger," Plaintiff Turman interrupted him to state he would not accept such verbal abuse.

67.     Plaintiff Turman received notice of his termination the next day.  While Pinnacle stated he was terminated for "acts of violence," this is false—there was no physical altercation involving Plaintiff Turman, nor was he violent in any way.  Plaintiff Turman was actually terminated in retaliation for objecting to Mr. Fowler's calling him "nigger" and "boy."

68.     As a result of Defendants' discriminatory and retaliatory actions, Plaintiff Turman suffered economic damage such as loss of salary, benefits, and other compensation.  Plaintiff Turman has also suffered emotional pain and suffering.

## CAUSES OF ACTION

### AS AND FOR A FIRST CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.
### (Discrimination)

69.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

70.     Plaintiffs were subjected to discrimination on the basis of their race and/or color by Defendants.

71.     Due to Plaintiffs race and/or color, Defendants subjected Plaintiffs to a discriminatory lower rate and/or total amount of pay and other compensation incentives, discriminatory hiring opportunities, discriminatory work assignments, discriminatory denial of promotional opportunities and/or titles, demotions, discipline, strict restrictions on hours and leaves to which Plaintiffs' White co-workers were not subjected to.

72.     Defendants' discriminatory treatment of Plaintiffs combined with their fostering of hostile work environment towards Black employees forced Plaintiff Beauford to terminate his employment with Defendants and resulted in Plaintiff Turman's termination.

73.     Defendants' actions are in direct violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

74.     As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

Plaintiffs have also been damaged by incurring lost wages and benefits due to their constructive and/or direct discharge.

### AS AND FOR A SECOND CAUSE OF ACTION FOR A VIOLATION OF
### Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.
### (Hostile Work Environment)

75.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

76.     Plaintiffs were subjected to a hostile work environment towards Black employees.

77.     Defendants fostered and maintained a hostile work environment towards Black employees by permitting their supervisors and other employees to consistently and severely harass Plaintiffs on the basis of their race and/or color. Defendants maintained said hostile work environment by allowing their employees to make racially derogatory comments, slurs, and epithets towards Plaintiffs, as well as treating Plaintiffs in a discriminatory manner. Moreover, Defendants failed to remedy or correct the hostile work environment they fostered by ignoring complaints made by Plaintiffs and failing to reprimand and/or take remedial action towards their employees who harassed Plaintiffs on the basis of their race and/or color.

78.     Defendants' failure to take remedial action combined with their discriminatory treatment of Plaintiffs resulted in Plaintiffs' constructive termination or Defendants' termination of Plaintiffs.

79.     Defendants' actions are in direct violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

80.     As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects.

Plaintiffs have also been damaged by incurring lost wages and benefits due to their direct and/or constructive discharge.

## AS AND FOR A THIRD CAUSE OF ACTION FOR A VIOLATION OF
## Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.
### (Retaliation)

81.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

82.     Plaintiffs were subjected to retaliation for their engagement in a protected activity.

83.     Plaintiffs were subjected to demotions, heightened scrutiny, extraordinary discipline such as demerits and/or suspensions, verbal reprimands, assignments of difficult and unusual job duties, and denied rehiring for their complaints of racial discrimination and harassment to a variety of Defendants' supervisors and other employees.

84.     Defendants' actions are in direct violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*

85.     As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by incurring lost wages and benefits due to their direct and/or constructive discharge.

## AS AND FOR A FOURTH CAUSE OF ACTION FOR A VIOLATION OF
## Section 1981 of the Civil Rights Act of 1866, 42 U.S.C § 1981 et seq.
### (Discrimination)

86.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

87.     Plaintiffs were subjected to discrimination on the basis of their race and/or color by Defendants.

88.     Due to Plaintiffs race and/or color, Defendants subjected Plaintiffs to a discriminatory lower rate and/or total amount of pay and other compensation incentives, discriminatory hiring opportunities, discriminatory work assignments, discriminatory denial of promotional opportunities and/or titles, demotions, discipline, strict restrictions on hours and leaves to which Plaintiffs' White co-workers were not subjected to.

89.     Defendants' discriminatory treatment of Plaintiffs combined with their fostering of hostile work environment towards Black employees forced Plaintiff Beauford to terminate his employment with Defendants and resulted in Plaintiff Turman's termination.

90.     These actions are in direct violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §§ 1981 *et seq.*

91.     As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by incurring lost wages and benefits due to their constructive and/or direct discharge.

### AS AND FOR A FIFTH CAUSE OF ACTION FOR A VIOLATION OF Section 1981 of the Civil Rights Act of 1866, 42 U.S.C § 1981 et seq.
### (Hostile Work Environment)

92.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

93.     Plaintiffs were subjected to a hostile work environment towards Black employees.

94.     Defendants fostered and maintained a hostile work environment towards Black employees by permitting their supervisors and other employees to consistently and severely harass Plaintiffs on the basis of their race and/or color. Defendants maintained said hostile work environment by allowing their employees to make racially derogatory comments, slurs, and

epithets towards Plaintiffs, as well as treating Plaintiffs in a discriminatory manner. Moreover, Defendants failed to remedy or correct the hostile work environment they fostered by ignoring complaints made by Plaintiffs and failing to reprimand and/or take remedial action towards their employees who harassed Plaintiffs on the basis of their race and/or color.

95.     Defendants' failure to take remedial action combined with their discriminatory treatment of Plaintiffs resulted in Plaintiffs' constructive termination or Defendants' termination of Plaintiffs.

96.     These actions are in direct violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §§ 1981 *et seq.*

97.     As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by incurring lost wages and benefits due to their direct and/or constructive discharge.

### AS AND FOR A SIXTH CAUSE OF ACTION FOR A VIOLATION OF Section 1981 of the Civil Rights Act of 1866, 42 U.S.C § 1981 et seq.
**(Retaliation)**

98.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

99.     Plaintiffs were subjected to retaliation for their engagement in a protected activity.

100.    Plaintiffs were subjected to demotions, heightened scrutiny, extraordinary discipline such as demerits and/or suspensions, verbal reprimands, assignments of difficult and unusual job duties, and denied rehiring for their complaints of racial discrimination and harassment to a variety of Defendants' supervisors and other employees.

101.    These actions are in direct violation of Section 1981 of the Civil Rights Act of 1866, 42 U.S.C §§ 1981 *et seq.*

102.    As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by incurring lost wages and benefits due to their direct and/or constructive discharge.

## AS AND FOR A SEVENTH CAUSE OF ACTION FOR A VIOLATION OF Chapter 21 of the Texas Labor Code, Tex. Labor Code. § 21.001 et seq.
### (Discrimination)

103.    Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

104.    Plaintiffs were subjected to discrimination on the basis of their race and/or color by Defendants.

105.    Due to Plaintiffs race and/or color, Defendants subjected Plaintiffs to a discriminatory lower rate and/or total amount of pay and other compensation incentives, discriminatory hiring opportunities, discriminatory work assignments, discriminatory denial of promotional opportunities and/or titles, demotions, discipline, strict restrictions on hours and leaves to which Plaintiffs' White co-workers were not subjected to.

106.    Defendants' discriminatory treatment of Plaintiffs combined with their fostering of hostile work environment towards Black employees forced Plaintiff Beauford to terminate his employment with Defendants and resulted in Plaintiff Turman's termination.

107.    These actions are in direct violation of Chapter 21 of the Texas Labor Code, Tex. Labor Code. §§ 21.001 *et seq.*

108.     As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by incurring lost wages and benefits due to their constructive and/or direct discharge.

## AS AND FOR AN EIGHTH CAUSE OF ACTION FOR A VIOLATION OF
## Chapter 21 of the Texas Labor Code, Tex. Labor Code. § 21.001 et seq.
### (Hostile Work Environment)

109.     Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

110.     Plaintiffs were subjected to a hostile work environment towards Black employees.

111.     Defendants fostered and maintained a hostile work environment towards Black employees by permitting their supervisors and other employees to consistently and severely harass Plaintiffs on the basis of their race and/or color. Defendants maintained said hostile work environment by allowing their employees to make racially derogatory comments, slurs, and epithets towards Plaintiffs, as well as treating Plaintiffs in a discriminatory manner. Moreover, Defendants failed to remedy or correct the hostile work environment they fostered by ignoring complaints made by Plaintiffs and failing to reprimand and/or take remedial action towards their employees who harassed Plaintiffs on the basis of their race and/or color.

112.     Defendants' failure to take remedial action combined with their discriminatory treatment of Plaintiffs resulted in Plaintiffs' constructive termination or Defendants' termination of Plaintiffs.

113.     These actions are in direct violation of Chapter 21 of the Texas Labor Code, Tex. Labor Code. §§ 21.001 *et seq.*

114.   As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by incurring lost wages and benefits due to their direct and/or constructive discharge.

## AS AND FOR A NINTH CAUSE OF ACTION FOR A VIOLATION OF
## Chapter 21 of the Texas Labor Code, Tex. Labor Code. § 21.001 et seq.
### (Retaliation)

115.   Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

116.   Plaintiffs were subjected to retaliation for their engagement in a protected activity.

117.   Plaintiffs were subjected to demotions, heightened scrutiny, extraordinary discipline such as demerits and/or suspensions, verbal reprimands, assignments of difficult and unusual job duties, and denied rehiring for their complaints of racial discrimination and harassment to a variety of Defendants' supervisors and other employees.

118.   Defendants' actions are in direct violation of Chapter 21 of the Texas Labor Code, Tex. Labor Code. §§ 21.001 *et seq.*

119.   As a result of these illegal actions, Plaintiffs have been physically and emotionally damaged in an amount that is not presently calculable due to the ongoing and future effects. Plaintiffs have also been damaged by incurring lost wages and benefits due to their direct and/or constructive discharge.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully requests judgment against Defendants and the following relief as follows:

1.   A jury trial on these issues to determine liability and damages;

2.      Preliminary and permanent injunctions against Defendants and their officers, owners, agents, successors, employees, representatives, and all persons acting in concert with them, from engaging in each of the unlawful practices, policies, customs and usages set forth herein;

3.      A judgment declaring that the practices complained of herein are unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, Section 1981 of the Civil Rights Act of 1866, 42 U.S.C § 1981 *et seq.*, and Chapter 21 of the Texas Labor Code, Tex. Labor Code. § 21.001 *et seq.;*

4.      An award to the Plaintiffs for the amount of unpaid wages including interest thereon, and penalties subject to proof;

5.      All damages which Plaintiffs sustained as a result of Defendants' conduct including back pay, front pay, general and special damages for lost compensation and job benefits they would have received but for Defendants improper and unlawful employment practices;

6.      An award to Plaintiffs of compensatory damages, but not limited to damages for emotional pain and suffering;

7.      An award to Plaintiffs of pre-judgment interest at the highest level rate, from and after the date of service of the initial complaint in this action on all unpaid wages from the date such wages were earned and due;

8.      An award of punitive damages;

9.      Awarding Plaintiffs their costs and disbursements incurred in connection with this action including reasonable attorneys' fees, expert witness fees, and other costs;

10.     Post-judgment interest, as provided by law; and

11.     Granting Plaintiffs other and further relief as this Court finds necessary and proper.

## <u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand a trial

by jury on all questions of fact raised by this Complaint.


Dated: December 21, 2016
        Austin, Texas

                                  Respectfully submitted,

                                  By: _/s/ Jay D. Ellwanger_____

                                  Jay D. Ellwanger
                                  Texas State Bar No. 24036522
                                  jellwanger@dpelaw.com
                                  Gabriel R. Gervey
                                  Texas State Bar No. 24072112
                                  ggervey@dpelaw.com
                                  **DiNovo Price Ellwanger & Hardy LLP**
                                  7000 North MoPac Expressway
                                  Suite 350
                                  Austin, Texas 78731
                                  (512) 539-2626 (phone)
                                  (512) 539-2627 (fax)


                                  OF COUNSEL:

                                  Holt Major Lackey
                                  Texas State Bar No. 24047763
                                  hlackey@dpelaw.com
                                  Vasilios Manthos
                                  Texas State Bar No. 24100887
                                  vmanthos@dpelaw.com
                                  **DiNovo Price Ellwanger & Hardy LLP**
                                  7000 North MoPac Expressway
                                  Suite 350
                                  Austin, Texas 78731
                                  (512) 539-2626 (phone)
                                  (512) 539-2627 (fax)

                                  James A. Vagnini
                                  N.Y. State Bar No. 2958130
                                  jvagnini@vkvlawyers.com

Monica Hincken
N.Y. State Bar No. 5351804
mhincken@vkvlawyers.com
**Valli Kane & Vagnini, LLP**
600 Old Country Road, Suite 519
Garden City, New York 11530
(516) 203-7180 (phone)
(516) 706-0248 (fax)

**ATTORNEYS FOR PLAINTIFF**